UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-34-GWU

JERI AMANDA FERRELL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

> Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

07-34  Jeri Amanda Ferrell

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-34  Jeri Amanda Ferrell

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jeri Amanda Ferrell, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of migraine headaches, syrinx[1] of the medulla, and degenerative changes of the cervical spine.  (Tr. 14).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 18-21).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE a series of hypothetical questions about the plaintiff, a 23-year-old individual with a high school education and experience as a fast food worker.  The hypothetical factors which the ALJ eventually adopted consisted of a restriction to light level exertion with a sit/stand option every 45 minutes, no more than occasional reaching overhead, a "seriously limited but not precluded" ability to deal with work stresses, and a "limited but

---

[1] Syrinx is defined as "a tube or pipe."  Dorland's Illustrated Medical Dictionary, 27th Ed., p. 1651.

7

satisfactory" ability to maintain attention and concentration and demonstrate reliability. The ALJ also specified that the plaintiff would be limited to low stress jobs only. (Tr. 456-7). The VE responded that there were jobs that such a person could perform and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 457).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to migraine headaches, which she related to a condition known as astrocytoma[2] of the brain stem. (Tr. 85). The astrocytoma had been treated by radiation when she was two years old in 1984, and the radiation had caused damage to her neck which had required a cervical fusion in 1986. (Tr. 443). She testified that she had constant, debilitating migraines which were essentially untreatable even with high doses of medications. (Tr. 442-3, 450-2). She had limited range of motion in her neck and daily neck pain even taking her medication. (Tr. 445, 453). Due to her situation and physical pain, she was depressed. (Tr. 454).

Remote records show that an astrocytoma was removed without complications at age two, although a syrinx remained in the medulla and the

---

[2] An astrocytoma is a type of tumor of the brain. Dorland's Illustrated Medical Dictionary, 27th Ed., p. 160.

plaintiff's cervical fusion was noted to have been performed without complications. (E.g., Tr. 132-3, 139). The plaintiff was even able to be a cheerleader in school, although she was limited from doing any stunts standing on her head or placing undue pressure on her head or neck. (Tr. 130). She was being treated for frequent headaches even before her alleged onset date of March 2, 2004. In 2004 and 2003, for instance, Neurologist Dr. Cary Twyman noted that the plaintiff's neck was rigid in all directions and he appeared to think that her headaches were the tension type rather than migraines, aggravated by anxiety and depression. (Tr. 161). He recommended aggressive treatment for issues of anxiety and depression and a referral to pain management, and was concerned that the plaintiff was demonstrating pain medication-seeking behavior. (Tr. 156-62).

   Dr. Kip Beard conducted a consultative examination of the plaintiff on May 10, 2005, after her alleged onset date, and noted an obvious restriction of motion of the neck "in addition to some soft tissue [induration] and trapezius tightness." (Tr. 275). There was also some restriction in range of motion of the shoulders, but the lumbar spine and hips were normal and she was able to walk on her heels and toes and squat without difficulty. (Tr. 276). Dr. Beard concluded that his objective findings were consistent with "significant limitation" in lifting, carrying, reaching, repetitive handling of objects, and prolonged moving about. (Tr. 277).

   A state agency physician, Dr. Allen Dawson, reviewed the evidence and concluded that the plaintiff could perform light level exertion and was limited to

07-34  Jeri Amanda Ferrell

occasional reaching overhead with both arms. (Tr. 286-92). Dr. Dawson stated that he gave Dr. Beard's examination great weight and opined that his opinion was not significantly different from that of the examining source, although he did not explain why he had not followed Dr. Beard in placing a significant limitation on repetitive handling. (Tr. 290-1). Another state agency physician affirmed Dr. Dawson's report without additional comment. (Tr. 333-40).

Although evidence of subsequent treatment for migraines and neck pain was submitted, the physicians involved did not provide any specific functional restrictions. (E.g., Tr. 412-13, 417-19).

The plaintiff argues that the ALJ committed error in not adopting Dr. Beard's restrictions, since he was the only examining source to provide an opinion. Unfortunately for the plaintiff, Dr. Beard's restrictions were presented to the VE, who responded that they would not affect the jobs that he had listed, other than producing approximately a ten percent reduction in numbers. (Tr. 460). Therefore, any error in adopting Dr. Dawson's restrictions was harmless.[3] The plaintiff simply failed to show that her conditions would preclude all work activity.

The plaintiff also argues that the ALJ erred in not adopting the mental restrictions given by the only psychological examiner, Dr. Crystal Sahner. The

---

[3] Additionally, the plaintiff maintains that the state agency physicians limited reaching in all directions, not just overhead, but Dr. Dawson specifically qualified his limitation to overhead reaching. (Tr. 288).

10

plaintiff was pregnant at the time of Dr. Sahner's May, 2005 examination and had three other children who did not live with her.  (Tr. 278-9).  She felt that her migraines affected her ability to be a parent, but also stated that she was fired from her most recent job at McDonald's, not because of the migraines, but because of the medication she had to take for them, although they were not narcotic drugs.  (Tr. 279).  She felt that her migraines were brought on by many things, including certain smells, but still smoked one to two packs of cigarettes a day.  (Tr. 279-80).  She denied using alcohol or illegal drugs, although she had been arrested six to eight months ago on a DUI charge resulting from prescription medication.  (Tr. 280).  She said that as long as she did not have a migraine headache she was happy.  (Id.).  Dr. Sahner diagnosed only a "psychological factor of stress affecting migraine headaches," but concluded that the plaintiff's ability to tolerate the stress and pressure of day-to-day employment would be "markedly affected." (Tr. 282-3).  She would also have a "moderately affected" ability to sustain attention and concentration to the completion of simple, repetitive tasks.  (Tr. 283).

      Once again, however, although the ALJ did not adopt Dr. Sahner's language, her restrictions were presented to the VE, who responded that he was not comfortable with the terminology.  (Tr. 458-9).  He agreed that if the plaintiff had no useful ability to tolerate job stresses, there would be no jobs.  However, there is substantial evidence to support the ALJ's interpretation of a "marked" restriction as equivalent to "seriously limited but not precluded."  The "B" criteria of the

11

07-34  Jeri Amanda Ferrell

Commissioner's Listings contain five categories of limitation, of which "marked" falls between "moderate" and "extreme," the most serious limitation.  (E.g., Tr. 327). While the "B" criteria are not intended to correspond with residual functional capacity findings in the absence of any other evidence from a treating or examining source, see Social Security Ruling 96-8p, and state agency reviewers who provided only a "moderate" restriction in pace (Tr. 309-11, 313-15), it appears that the ALJ gave the plaintiff the benefit of the doubt.  Accordingly, this issue also does not provide a basis for remand.

   The decision will be affirmed.

   This the 8th day of October, 2008.

Signed By:

G. Wix Unthank

United States Senior Judge